**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| GUSSIE STEPHENS,<br>on behalf of Plaintiff and the class<br>members described herein,<br><br>Plaintiff,<br><br>v.<br><br>KODA LENDING d/b/a<br>HELPFUL LENDING;<br>CAMANA CREDIT LLC;<br>DIMENSION CREDIT (CAYMAN),<br>L.P., and<br>JOHN DOES 1-20,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | DEMAND FOR TRIAL BY JURY |

**COMPLAINT – CLASS ACTION**

1. Plaintiff Gussie Stephens brings this action against Defendants (a) Koda Lending doing business as Helpful Lending, (b) Camana Credit LLC, (c) Dimension Credit (Cayman), L.P., and (d) John Does 1-20 to secure redress for usurious and illegal loans (such as Exhibit A) made to Indiana residents.

2. Plaintiff seeks damages under the Indiana Uniform Consumer Credit Code (Count I), treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §1964 (Count II), and restitution (Count III).

**JURISDICTION AND VENUE**

3. The Court has subject matter jurisdiction under 28 U.S.C. §1331 (general federal question), 15 U.S.C. §1692k (FDCPA), 18 U.S.C. §1964 (RICO), 28 U.S.C. §1337 (interstate commerce), and 28 U.S.C. §1367 (supplemental jurisdiction). Jurisdiction may also exist under 28 U.S.C. §1332(d) (Class Action Fairness Act).

4. This Court has personal jurisdiction over Defendants because they:

a. Knowingly participated in the making and collection of unlawful loans to

Indiana residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

5. Venue is proper because acts to obtain and collect the loan impacted Plaintiff in Indiana.

6. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

7. Plaintiff Gussie Stephens is a citizen of Indiana who at all relevant times has been a

resident of Indianapolis, Indiana.

**Defendants**

8. Defendant Koda Lending d/b/a Helpful Lending ("Helpful Lending") is an entity that purports to be incorporated under the laws of the Crow Creek Sioux Tribe ("Tribe"). It makes high-interest loans over the Internet via a website, www.helpfullending.com. (Exhibit B) It uses the address P.O. Box 246, Ft. Thompson, SD 57339.

9. Defendant Camana Credit LLC is a limited liability company organized under the law of Delaware. Its registered agent and office is Agents and Corporations, Inc., 1201 Orange St., Ste. 600, One Commerce Center, Wilmington, DE 19801. It also uses the address of 20 Genesis Close, George Town, Cayman Islands, KY1-1208.

10. On information and belief, Defendant Camana Credit LLC operates Helpful Lending.

11. Defendant Camana Credit LLC holds a UCC lien (Exhibit C) on all assets of Helpful Lending. This includes all receivables of Helpful Lending, such as the loans complained of herein.

12. The taking of such a security interest indicates that capital for the loans made by Helpful Lending comes from Camana Credit LLC.

13. Defendant Dimension Credit (Cayman), L.P., is a limited partnership entity based in the Cayman Islands. It may be served at 20 Genesis Close, George Town, Grand Cayman, KY1-1208.

14. The parent of Defendant Dimension Credit (Cayman), L.P. describes itself as "[a] specialty finance firm focused on direct lending. Founded in 2014, Dimension Credit is a specialty finance firm focused on direct lending. Dimension Credit executives have extensive management experience in senior secured lending, investment banking, and portfolio management. We leverage a data driven approach that drives our underwriting and risk management delivering consistent attractive returns for our investors." (https://dimensioncredit.com/)

15. Defendant Dimension Credit (Cayman), L.P. holds a security interest in all assets of Camana Credit LLC. (Exhibit D)

16. The taking of such a security interest indicates that capital for the loans made by Helpful Lending comes from Dimension Credit (Cayman), L.P., through Camana Credit LLC.

17. The principal economic benefit of the activities of Helpful Lending is received by Camana Credit LLC, Dimension Credit (Cayman), L.P., and other non-Native American persons.

18. Defendants John Does 1-20 are other persons and entities that participated in the lending activities described herein.

## FACTS

19. In need of money, the Crow Creek Sioux Tribe attempted to rent out its sovereign immunity to non-tribal persons and entities who agreed to pay the Tribe a small percentage of each loan as a fee or commission.

20. The Tribe became a supplier in the rental market for sovereign immunity, making "rent-a-tribe" agreements with various investors.

21. In addition to Helpful Lending, the following Internet lenders have purported to operate as arms of the Crow Creek Sioux Tribe:

a. Basswood Lending;

b. Bison Lending d/b/a Buffalo Lake Lending; and

c. Dakota Lending d/b/a MyLoanSite.

22. On information and belief, the Tribe received less than five percent of revenues from the lenders in exchange for the use of its name.

23. Loan approval was made by the non-tribal owners of the lender.

24. Loans are funded from bank accounts to which the Tribe has no access, and the loans are serviced and collected by nontribal entities off the Tribe's reservation.

25. Helpful Lending makes loans through its website, www.helpfullending.com, to consumers at interest rates in excess of 400% annually.

26. Helpful Lending does business in Indiana over the Internet, via email, via text message, via Automated Clearing House transactions, and over the telephone.

27. Many of the loans made by Helpful Lending are made to Indiana residents, including Plaintiff.

28. These residents have received funds via ACH transfers into bank accounts located in Indiana. The loans also provide for repayment via ACH transfers.

29. Helpful Lending—and the Defendants actually conducting the lending operation—affirmatively sought out and targeted Indiana residents for such loans. Helpful Lending states on its website that it "has elected not to conduct business in the following states: Arkansas, Connecticut, Georgia, Hawaii, Illinois, Massachusetts, Minnesota, New Mexico, New York, Pennsylvania, South Dakota, Vermont, Virginia, Washington, and West Virginia."

30. The funds lent are transferred by ACH credit to the borrowers' respective bank accounts in Indiana.

31. Repayment of the loans is made by ACH debit from the borrowers' respective bank accounts in Indiana.

## INDIANA REGULATION OF LENDING

32. The Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-201, establishes a maximum loan finance charge of 36% per annum for consumer loans other than supervised loans.

33. For loans other than supervised loans, Ind. Code § 24-4.5-3-201 provides:

> (1) Except as provided in subsections (7) and (9), with respect to a consumer loan, other than a supervised loan (as defined in section 501 [IC 24-4.5-3-501] of this chapter), a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter). . . .

34. With respect to supervised loans, the Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-508, provides:

> Loan finance charge for supervised loans.

> (1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.
>
> (2) The loan finance charge, calculated according to the actuarial method, may not exceed the equivalent of the greater of:
>
> (a) the total of:
>
> (i) thirty-six percent (36%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter) which is two thousand dollars ($2,000) or less;
>
> (ii) twenty-one percent (21%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than two thousand dollars ($2,000) but does not exceed four thousand dollars ($4,000); and
>
> (iii) fifteen percent (15%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than four thousand dollars ($4,000); or
>
> (b) twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) of this chapter). . . .

35. There is also a provision for small loans, Ind. Code § 24-4.5-7-101 *et seq.*, but it does not authorize Defendants' rates, and requires that small loans conform to other requirements that Defendants' loans do not comply with.

36. Ind. Code. § 24-4.5-7-201, "Limitations on finance charges," provides:

> (1) Finance charges on the first two hundred fifty dollars ($250) of a small loan are limited to fifteen percent (15%) of the principal.
>
> (2) Finance charges on the amount of a small loan greater than two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400) are limited to thirteen percent (13%) of the amount over two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400).
>
> (3) Finance charges on the amount of the small loan greater than four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550) are limited to ten percent (10%) of the amount over four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550).
>
> (4) The amount of five hundred fifty dollars ($550) in subsection (3) is subject to change under the provisions on adjustment of dollar amounts (IC 24-4.5-1-106). However, notwithstanding IC 24-4.5-1-106(1), the Reference Base Index to be used under this subsection is the Index for October 2006.

37. The amount of finance charge provided for in Exhibit A is more than double that permitted in Indiana under any provision.

38. Ind. Code § 24-4.5-1-201, "Territorial application," provides:

> (1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .
>
> > (c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.
> >
> > (d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means.
> >
> > (e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.
> >
> > (f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.
>
> For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether approval, acceptance, or ratification by any other agent or representative of the creditor or the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .
>
> (5) Notwithstanding other provisions of this section:
>
> > (a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and
> >
> > (b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.

(6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:

(a) An agreement that the law of another state shall apply.

(b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.

(c) An agreement that fixes venue. . . .

(8) If a creditor or a person acting on behalf of the creditor has violated the provisions of this article that apply to the authority to make consumer loans (IC 24-4.5-3-502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge, as set forth in IC 24-4.5-5-202.

39. Ind. Code § 24-4.5-5-202, "Effect of violations on rights of parties," provides:

. . . (3) A debtor is not obligated to pay a charge in excess of that allowed by this Article, and ***if the debtor has paid an excess charge the debtor has a right to a refund***. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

(4) ***If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten (10) times the amount of the excess charge. If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Article, the penalty may be recovered even though the creditor has refunded the excess charge.*** No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the department (IC 24-4.5-6-113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made. . . .

(7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.

(8) In any case in which it is found that a creditor has violated this Article, the court may award ***reasonable attorney's fees*** incurred by the debtor. . . . (Emphasis added)

40. The excessive interest charges imposed by Defendants were willful.

**SOVEREIGN IMMUNITY AS A DEFENSE TO STATE USURY LAWS**

41. In an attempt to evade prosecution under usury laws of states like Indiana, online lenders frequently create an elaborate charade claiming their otherwise illegal businesses are entitled to the sovereign immunity of Native American tribes.

42. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

43. "In cases like this one, any tribal-immunity test regrettably must also serve another purpose: separating true arms of the tribe from shams. Unscrupulous lenders can seek out tribes to pose as figureheads, hide behind their sovereign immunity, and break state law scot-free. Unfortunately, these rent-a-tribe schemes do happen. Jayne Munger, Note, *Crossing State Lines: The Trojan Horse Invasion of Rent-a-Bank and Rent-a-Tribe Schemes in Modern Usury Laws*, 87 Geo. Wash. L. Rev. 468, 478-79 (2019). To reserve tribal sovereign immunity for tribal sovereigns, our test must sift out impostors." *Ransom v. Greatplains Fin., LLC*, 148 F.4th 141, 149 (3d Cir. 2025).

44. An entity that "actually operates to enrich primarily persons outside the tribe or only a handful of tribal leaders" shows that it is not entitled to immunity. *People ex rel. Owen v. Miami Nation Enterprises*, 2 Cal.5th 222, 211 Cal.Rptr.3d 837, 386 P.3d 357 (2016).

45. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, are conducted by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

46. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

47. Further, sovereign immunity, even if legitimately invoked, still does not turn an

otherwise illegal loan into a legal one. *See, e.g., United States v. Neff*, 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

48. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## LOAN TO PLAINTIFF

49. On or about September 30, 2025, Helpful Lending made a loan to Plaintiff Gussie Stephens (Exhibit A) for $800. The loan would result in repayment of $4,226.20 if paid on schedule. The total interest charged would be $3,426.20, which according to Helpful Lending equates to an annual percentage rate of 763.86%.

50. The loan agreement (Exhibit A) is written on a standard form.

51. The loan was obtained for personal purposes and not for business purposes.

52. The principal amount was transferred to Plaintiff's bank account in Indiana via ACH.

53. The loans were made entirely via the Internet.

54. The loans were to be repaid via ACH. Plaintiff made some payments. The loan is still outstanding.

55. Plaintiff made some of the payments, including interest. Helpful Lending is seeking to collect the balance.

56. Defendants' lending does not actually occur on the Tribe's reservation.

57. A significant majority of the transaction occurs within the State of Indiana—applying

for the loans and receiving and collecting the funds.

58. The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

59. Plaintiff has never set foot on the Tribe's land.

60. Loans to Indiana residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Indiana.

**COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE**

61. Plaintiff incorporates paragraphs 1-60.

62. This claim is against all Defendants.

63. Because the loan made to Plaintiff violated the rate limits set by Indiana law, and the violation was intentional, Plaintiff and other borrowers are entitled to ten (10) times the amount of the excess charge.

**CLASS ALLEGATIONS**

64. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

65. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of Koda Lending d/b/a Helpful Lending at more than 36% interest (all of its loans qualify) (c) on or after a date two years prior to the filing of this action.

66. Plaintiff may alter the class definition to conform to developments in the case and discovery.

67. The class is so numerous that joinder of all members is not practicable. On

information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

68. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

69. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

70. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

71. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Statutory damages;

ii. Attorney's fees, expenses and costs; and

iii. Such other or further relief as is appropriate.

**COUNT II – RICO**

72. Plaintiff incorporates paragraphs 1-60.

73. This claim is against Camana Credit LLC, Dimension Credit (Cayman), L.P., and the Does, who are the RICO "persons."

74. All loans made in the name of Koda Lending d/b/a Helpful Lending to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business

of lending money at a rate usurious under Indiana law, where (c) the usurious rate is at least twice the enforceable rate (36%).

75. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

76. Helpful Lending is an enterprise affecting interstate commerce, in that it is located outside of Indiana and makes loans to Indiana residents via the Internet.

77. Defendants Camana Credit LLC, Dimension Credit (Cayman), L.P., and the Does are associated with this enterprise, in that they control it.

78. Defendants Camana Credit LLC, Dimension Credit (Cayman), L.P., and the Does conducted or participated in the conduct of the affairs of Helpful Lending through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

79. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

80. Plaintiff brings this claim on behalf of a class.

81. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of Koda Lending d/b/a Helpful Lending at more than 36% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

82. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

83. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether the loans at issue are "unlawful debts" as defined in RICO.

b. Whether Helpful Lending is an "enterprise."

c. Whether Defendants Camana Credit LLC, Dimension Credit (Cayman), L.P., and the Does are associated with Helpful Lending.

d. Whether Defendants Camana Credit LLC, Dimension Credit (Cayman), L.P., and the Does conducted or participated in the affairs of Helpful Lending through a pattern of making and collecting unlawful loans.

84. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

85. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

86. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants Camana Credit LLC, Dimension Credit (Cayman), L.P., and the Does for:

i. Treble damages;

ii. Attorney's fees, litigation expenses and costs of suit; and

iii. Such other or further relief as the Court deems proper.

**COUNT III – RESTITUTION**

87. Plaintiff incorporates paragraphs 1-60.

88. Defendants obtained money from Plaintiff and the class members through inequitable means, such that Defendants should be compelled to make restitution.

**CLASS ALLEGATIONS**

89. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

90. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made in the name of Koda Lending d/b/a Helpful Lending at more than 36% interest (all of its loans qualify) (c) on or after a date six years prior to the filing of this action.

91. Plaintiff may alter the class definition to conform to developments in the case and

discovery.

92. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

93. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

94. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

95. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

96. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Appropriate damages;

ii. Costs; and

iii. Such other or further relief as is appropriate.

*/s/Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Heather Kolbus
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**JURY DEMAND**

Plaintiff demands trial by jury.

*/s/Daniel A. Edelman*
Daniel A. Edelman

**NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*/s/Daniel A. Edelman*
Daniel A. Edelman

**DOCUMENT PRESERVATION DEMAND**

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman